## Collett's Guardian v. Standard Oil Company.

(Decided December 2, 1919.)

### Appeal from Oldham Circuit Court.

1. Highways—Motor Vehicles—Warning of Approach to Pedestrian —Negligence—Proximate Cause of Injury.—The statute makes the failure of one operating a motor vehicle to give a warning, by bell, horn, or other device, of its approach to a pedestrian, who is walking in the roadway of a public highway, negligence, per se, as to such pedestrian, and if the pedestrian suffers injury from the motor vehicle, and the proximate cause, of the injury, is the failure to give the warning, the operator, of the vehicle, is liable for the damages.

2. Highways—Motor Vehicles—Warning of Approach—Question for Jury.—Where there is positive evidence, that warnings were given by a motor vehicle, of its approach to a pedestrian walking in the roadway of a public highway, and there is, also, negative testimony by witnesses, who were so situated, that it could reasonably be inferred, that they could and would have heard the warnings, if they had been given, that they did not hear such warnings, the question of whether the warnings were or were not given, is for the jury.

3. Negligence—Children—Degree of Care Required to Exercise.—A child is not held to that degree of care and prudence, which persons, who have arrived at years of maturity, are required to exercise for their safety, but, a child is only held to exercise that degree of care, which is ordinarily exercised by children of its age, under similar circumstances.

J. BALLARD CLARK and H. J. TILFORD for appellant.

WILLIS, TODD and BOND for appellee.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

Cecil Collett, a small boy, thirteen years of age, was attending a school near the village of Crestwood. The school was kept in a building near the turnpike, which leads from Crestwood to LaGrange, and is about two hundred and ten yards, northeast of the crossing of the Floydsburg turnpike, over the pike from Crestwood to LaGrange. From the crossing, in the direction of the school house, it is slightly up grade. Along the side of the pike and paralleling it from the school house, in the direction of Crestwood, is the track of the L. & N. Railroad Company. In the afternoon of November 17, 1917, when the school was dismissed, from twenty to forty children, of various ages, came from the grounds of the school house, and the greater number of them, at least, proceeded, for a short distance, along, and upon the tracks of the railroad, in the direction of Crestwood, but, at that time, a train, approaching upon the tracks of the railroad, from the south, required them to leave the tracks of the railroad and return to the pike.

About the same time, a motor truck, used by the Standard Oil Company in distributing oil, approached from in the direction of Crestwood and proceeded along the pike toward LaGrange, and when it crossed the Floydsburg pike, was moving at a speed of, from eight to twelve miles per hour, but, as it proceeded, the speed of the truck was reduced very much, and it was moving very slowly along and upon the side of the pike opposite to the side upon which the approaching children were walking, when the boy, Collett, who was engaged in a romp with another small boy, pushed the other to the ground, and then fled from him, as though he expected the other lad to pursue him, and in so doing, he came immediately toward the moving truck, but, with his face turned backward, and looking in the direction opposite from the direction from which the truck was moving, and as a result, he collided with the front end of the truck. The collision was so forceful, that the boy was rendered unconscious, and fell upon the pike, in front of the machine, with his head in the direction, the machine was moving, but, the machine was proceeding so slowly, and so well under control, that, one of its front wheels ran between the boy's legs, but, was stopped before the wheel reached his body. Just about the time, the above circumstances were transpiring, an automobile was approaching the

point of collision between the truck and the boy, from the direction of LaGrange. There was evidence, which tended to prove, that the boy did not regain consciousness until the following day, and suffered very severe injuries, as the result of the collision, though these facts were not undisputed. There was no evidence, which tended to prove, that the ones, operating the truck, were guilty of any acts of either commission or omission, from which it might be inferred, that they failed to use any reasonable precaution to insure the safety of the appellant, except, that he testified, that the operators, of the truck, did not give any signal or warning of its approach by the sounding of a horn, or the ringing of a bell, or by other device for giving a warning, and that he never saw the truck, which injured him, nor was he aware of its presence. The appellant is corroborated in the statement, that the truck's driver did not give any warning of its approach, by several witnesses, who testify, that they did not hear any signal or warning, given by it, although, they were in a position, and under circumstances from which it could reasonably be inferred, that they would have heard the signals, if given. The evidence, by the driver of the truck and his assistant, was to the effect, that the warning was given by repeatedly sounding the Claxon horn, which was attached to the truck for that purpose.

At the close of all the evidence, offered by either party, the court sustained a motion for a directed verdict in appellee's favor, and of such ruling of the court, the appellant complains.

It is elementary, that where a fact is necessary to give one a cause of action, and the existence of such fact depends upon contradictory evidence, whether such fact exists, or does not exist, is a question for the jury, and that it is only where the uncontradicted evidence presents a state of facts, which shows, that a party has no cause of complaint, or no defense to the complaint, made against him, that the court is authorized to take the case from the jury. Hence, it is only, where, after admitting the testimony of a plaintiff, and every fair inference from it, to be true, and he still has failed to make out his case, that the court should take his case from the jury, by directing a verdict against him. Dallam v. Handley, 2 A. K. M. 418; Thompson v. Thompson, 17 B. M. 23; Baumeister

v. Markham, 101 Ky. 122; L. & N. R. R. Co. v. Howard, 82 Ky. 212; United Shakers v. Underwood, 11 Bush, 265; Shay v. R. L. & T. P. Co., 1 Bush 108; L. & N. R. R. Co. v. Johnson, 161 Ky. 837. It is conceded, on all hands, that a motor vehicle is a dangerous instrumentality, and that its operation, upon a public highway, must be attended with great caution and prudence, especially with reference to pedestrians, as a collision, between a motor vehicle and a pedestrian, would not endanger the vehicle, but, in all probability, be destructive of the life, or limbs of the pedestrian. Hence, if there were no statutory provisions relating to their operation, the common law, would require, that in their operation upon the highways, those, in charge of their operation, should exercise the care commensurate, with the dangers attending their operation, to persons, travelling upon the highways, and such care, would, in all cases, require a reasonable warning of their approach to persons upon the highway, if such was necessary to insure their safety. Moore v. Hart, 171 Ky. 734; Weider v. Otter, 171 Ky. 167. Aside from the above, the statute, subsection 15, section 2739, Kentucky Statutes, expressly provides, that a person operating a motor vehicle and approaching a person, who is walking in the roadway of a public highway, shall give warning of its approach "by signalling with a horn, bell, or other device." The statute is as follows: "Upon approaching a person walking in the roadway of a public highway, or a horse or other draft animals being ridden or driven thereon, a person, operating a motor vehicle shall give warning of its approach, by signalling with a horn, bell or other device, not calculated to frighten such animals, and use every reasonable precaution to insure the safety of such person or animal. . . ." The failure to signal the approach of a motor vehicle to a pedestrian in the roadway of a public highway, is thus made by statute, negligence, *per se,* as to such pedestrian, and if the pedestrian receives an injury, which is the proximate result of such failure, the operator of the vehicle is liable for the damages. In the instant case, however, it is insisted, that the appellant was not walking in the roadway of the public highway but was upon the space, intervening between the roadway of the highway and the railroad tracks, and hence, the appellee was under no duty, under the statute,

to give him any warning of the approach of the vehicle, and having the movements of the vehicle so well under control, that in the exercise of ordinary care for the safety of appellant, it was not necessary in order to his safety, to give a warning when he was not upon the road, but, in a place of safety, until suddenly and unexpectedly, he dashed out from behind the other children and came upon and across the roadway and ran against the truck, and that the operator had no opportunity, in the exercise of ordinary care, after discovering the peril of appellant, to give him a warning, nor to stop the truck before it collided with him. Such, however, does not appear from the uncontradicted evidence. The uncontradicted evidence does prove, that, at some time after leaving the school house, the appellant was on the track of the railroad, and left that track because of the approach of a train upon it, but, his testimony is, however, that, at the time, he was struck by the truck, he was then running toward it, which it must be inferred was along the road, as the truck was then proceeding in an opposite direction upon the road. Earl Collett testified, that, at the time, the truck and appellant collided, all the children, including appellant, were going along the road, toward Crestwood, and had covered about one-half of the disance from the school house to Crestwood, and, that, at the time of the collision, the appellant was running down the road. Cassady testified, that the children were coming down the road toward Crestwood, and the truck was proceeding toward the meeting point with them. These statements tend to prove, that appellant was travelling the roadway, and it can not be inferred, that he had just gotten upon the roadway, when he collided with the truck. There is no witness, who stated, that the appellant was upon the intervening space between the roadway of the pike and the railroad right of way, until just immediately before he was hit by the truck. The two men, who were upon the truck, and the boy, Potts, who was a witness for appellee, testified, that appellant came from behind the other children, and ran diagonally toward the truck, but, neither of them, say, that appellant, was not in the roadway, when he started, or that, the other children were not then in the roadway of the pike. If there had been evidence to the effect, that appellant was not in the roadway of the pike, but in a place of

safety, and where it could not be reasonably apprehended by appellee's servants, that he was in any danger from the truck, and that he left such place of safety and came into the roadway and against the truck so suddenly and unexpectedly, that by the exercise of ordinary care on their part, after discovering his peril, they could not avert the danger, it could not be said, that such evidence was entirely uncontradicted, in the light of the testimony of appellant, his brother and Cassady, that when struck, he was proceding along the road.

It is also, insisted, that the witnesses, who proved, that the operator of the truck gave warning signals with the horn, as it approached appellant, were positive in their statements to that effect, and that the evidence, which was offered to prove the contrary, was negative, and consisted of declarations to the effect, that the witnesses did not hear the signals, and for such reason, the court was justified in holding, that the proof of the giving of the signals, was uncontradicted. Such, however, has never been the rule, as adhered to by this court. In C. & O. Ry. Co. v. Hawkins, 124 S. W. 838, it was held, that, whether positive testimony, that signals for a crossing were given, outweighs negative testimony of witnesses, that they were not given, the witnesses deposing, that they did not hear them, was a question for the jury, as after all, the truth of the matter depends upon the credibility of the witnesses and their means of knowledge. The same conclusion was reached in L. & N. R. R. Co. v. Brown, 113 S. W. 466; L. & N. R. R. Co. v. O'Nan, 119 S. W. 1192; and C. & O. Ry. Co. v. Brashear, 124 S. W. 273 There is no reason, why the same rule should not prevail, in regard to proving or disproving the giving of signals, by those operating a motor vehicle The appellant deposed, that no signal or warning was given from the truck, and that he did not see it, nor know of its presence, and in the latter statement, he is corroborated by all the evidence, as it must be inferred, that, if he had known of its presence, he would have avoided a collision with it. It can not be surmised, that, if the warning signal had been given, that the appellant would not have heard it, and, having heard it failed to avail himself of the knowledge of the presence of the truck and kept out of its way. Hence, we conclude, that the court was in error, in holding, that upon the uncontradicted evidence, there was a

failure of evidence tending to prove any negligence upon the part of the appellee, which was the proximate cause of the injury.

The uncontradicted evidence, does not prove, that appellant so contributed to his injury, by his own negligence, that, without which, the injury would not have occurred. Of course, if he had seen the truck approaching · upon the highway, the failure to give a warning, would not have been the proximate cause of his injury, or if he was guilty of such negligence, in failing to know of its approach and keep out of its way, but, for which he would not have come in contact with it, his action must necessarily fail. It appears, that an approaching automobile was giving out a warning, in his rear, and he deposed, that such was the cause of his looking backward and failing to see the approach of the truck; a railroad train was passing or had just passed and going in the direction of La-Grange; and while the uncontradicted evidence shows, that he was engaged in a romp with another boy, and at the time, he was struck by the truck, he was running away from the boy and looking backward, as he went, having heard no signal of the approach of the truck, and no reason to apprehend, that any obstacle was in front of him, it could not be said as a matter of law, that he was failing to exercise that degree of care to be expected of one of his age under similar circumstances. A child is not held to that degree of care and prudence, which persons, who have arrived at years of discretion, must be required to exercise, but, is held to only that degree of care for his own safety, as is ordinarily exercised by children of his age, under similar circumstances. Davis' Admr. v. Ohio Valley Banking & Trust Co., 127 Ky. 800; Ky. Hotel Co. v. Camp, 97 Ky. 425; Owensboro v. York, 117 Ky. 294; P. & M. R. R. Co. v. Hoehle, 75 Ky. 41; Ky. Central R. R. Co. v. Gastineau, 83 Ky. 119; Macon v. M. & P. R. R. Co., 110 Ky. 680. The judgment is therefore reversed and cause remanded with directions to award a new trial, and for other proper proceedings not inconsistent with this opinion.