## Payne, Director General, etc. v. Pritchard's Admr.

(Decided October 9, 1923.)

### Appeal from McCreary Circuit Court.

1. Railroads—Lookout Required at Places Used by Public, Though Not Public Crossings.—If railroad tracks at other than crossings, with the knowledge and acquiescence of the company, are used by the public in such large numbers that their presence on the tracks should be anticipated, then the company must use ordinary care to avoid injuring them, and to that end must keep a lookout and give reasonable warning of the train's approach, etc.

2. Railroads—Whether Use of Tracks Required Lookout and Warning for Jury.—In an action for death on a railroad in a town of about 300 inhabitants, evidence held sufficient to make it a question for the jury whether or not the tracks at the place of the accident were used by the public in such large numbers as to re-

quire the company to anticipate their presence and to perform the precautionary duties imposed by law as to lookout, warning, etc.

TYE & SILER for appellant.

HENRY C. GILLIS and JOHN W. SAMPSON for appellee.

Opinion of the Court by Judge Clay—Affirming.

This is an appeal from a judgment in favor of Marvin Pritchard's administrator for $3,000.00.

At the time of the accident which resulted in his death, Marvin Pritchard was a little over nine years of age, and resided with his father and mother in Whitley City. On the morning of February 7, 1920, his mother sent him to Bryant's store across the railroad tracks for the purpose of getting some coal oil. While attempting to cross the tracks he was struck by an engine of the C. N. O. & T. P. Railway, then being operated by the Director General of Railroads. The engine was going north at the time and was backing through the town.

It is conceded that there was sufficient evidence of the failure of those in charge of the engine to keep a proper lookout and to give reasonable warning of the engine's approach, but insisted that the conditions were not such as to impose these precautionary duties.

Whitley City is incorporated and is the county seat of McCreary county. At the time of the accident it had about three hundred inhabitants. The town is in two sections, and travel between the sections is not along a street, but along, over and on the side of the railroad tracks. There are three tracks, the northbound main, southbound main and the house track. On the east side of the northbound main track and on the railroad right of way is a path which is used by travelers. Between the southbound main track and the house track there is also a path which is used by persons walking. At the south end of the town there is a public county road crossing, and the same road crosses the railroad 1,478 feet away in the north end of the town. It was shown that from 95% to 97% of the people walked the railroad tracks and the paths beside the railroad tracks, frequently crossing back and forth over the tracks. The father of the decedent testified that on an average of about 150 persons daily used the tracks and paths as a walkway. One witness stated that about one-half the pedestrians used the tracks, while the other half used the pathways.

It is strongly pressed in argument that, as there were other ways which the public and decedent could use without subjecting themselves to danger from passing trains, and as the evidence showed that only about one-half of the daily average of 150 persons actually used the railroad tracks for the purpose of crossing or passing from one section of the town to the other, the evidence was insufficient to take the case to the jury. Doubtless it is unfortunate that the public persist in using railroad tracks as a walkway, but the law is often called on to meet conditions as they are, and not as they should be. Having a high regard for life and limb, it has become one of its settled rules that if railroad tracks, with the knowledge and acquiescence of the company, are used by the public in such large numbers that their presence on the tracks should be anticipated, then the company is under the duty to use ordinary care to avoid injuring them, and to that end must keep a lookout, give reasonable warning of the train's approach, etc. Though it be conceded that some of the public used the path outside the tracks and some the path between the tracks, the width of the path between the tracks was so narrow that those using it were subjected practically to the same danger as those actually walking along the tracks. That being true, the evidence was sufficient to show that there was a daily average of over one hundred persons who used the tracks and the space between the tracks in such a way as to be in danger from passing trains. On the whole, we conclude that the evidence was sufficient to make it a question for the jury whether or not the tracks at the place of the accident were used by the public in such large numbers as to require the company to anticipate their presence and to perform the precautionary duties imposed by law.

Judgment affirmed.