## Cornett's Administrator v. Louisville & Nashville Railroad Company.

(Decided March 25, 1930.)

ASTOR HOGG for appellant.

H. W. WILLEN, D. I. DAY, C. S. LANDRUM, A. M. WARREN and MORGAN & HARVIE for appellee.

OPINION OF THE COURT BY COMMISSIONER STANLEY—Reversing.

While walking along the railroad tracks in the village of Blackey, Letcher county, Ance Cornett was

struck by a train and received injuries which resulted in his death several hours later. In a suit for damages by his administratrix against the appellee Louisville & Nashville Railroad Company, the jury was peremptorily instructed at the close of the evidence introduced in behalf of plaintiff to find for the railroad company. The court is called upon to determine the correctness of that action.

We shall use the directions as given in railroad parlance instead of the compass points, which are different.

The evidence is ample, we think, to sustain plaintiff's allegations that the railroad at the place of the accident was used by a sufficient number of persons to authorize the submission to the jury of the issue as to whether or not the company owed a duty to maintain a lookout for pedestrians. Although most of the evidence along this line referred generally to the railroad right of way rather than the specific point of the accident, the situation and use of the tracks by the public are much like those referred to in Louisville, H. & S. L. Ry. v. Osborne, 149 Ky. 648, 149 S. W. 954, and Illinois C. Ry Co. v. Lashley, 208 Ky. 374, 270 S. W. 806.

Extending north of the railroad station is a long passing track paralleling the main track, and about 675 feet from the station, where the accident occurred is a track, running at an angle, connecting the passing and main tracks. The length of this connecting or crossover track is 165 feet from point of switch to point of switch and 35 feet from point of switch to point of frog. The deceased was seen walking south toward the station between the main and passing track until he stepped across the first rail of this connecting track, and then, instead of continuing across it, he veered his course and followed the connecting track toward the main track. This apparently was for a distance of some 15 or 20 feet, for the evidence is that he took at least seven or eight steps along the connecting track and one step onto the main track when he was struck by a passenger train also going south. Just before this occurred, there was a freight train passing Cornett going north, and it was in the act of stopping with its rear end about even with the deceased. The evidence is clear and certain that the whistle of the passenger train had been blown for the station back about 200 yards, and, as it approached the deceased and station, the bell was ringing. The two tracks curved eastwardly at a point beginning about 125

feet north of where Cornett was struck, so that the freight train on the inside of the curve obstructed the view of the enginemen until they got that distance away. It is in evidence also that, because of the length of the boiler, the engineer, who was on the west or right-hand side, could not have seen the deceased. But there is nothing to show that the fireman or another on the other side of the engine could not have seen him as he was walking between the two tracks and after he changed his course toward the main track. The company cannot be excused because the situation was such that the deceased's peril could not be discovered by the engineer. It was its duty to have an observer on the other side of the engine. Chesapeake & O. Ry. v. Honaker, 190 Ky. 125, 226 S. W. 394.

The evidence warranted the conclusion that the deceased occupied the attitude of a licensee, and, if the jury should reach that conclusion, then it was proper to consider the duty of the company to maintain a lookout for the deceased, to discover his peril, and, observing it, to exercise ordinary care to avoid injuring him, taking into consideration the time in which the employees had to act and all the circumstances of the situation. Johnson's Adm'r v. L. & N. (Ky.) 118 S. W. 383.

The case must be decided on the theory that the company's agents did see him or could have seen him by exercising ordinary care and failed to sound an alarm as he was seen to approach the place of danger. It is a familiar rule that on motion for a peremptory instruction the evidence introduced on behalf of the opposing party must be taken as true, and a directed verdict is proper if after admitting every fact shown by that evidence to be true, as well as considering all reasonable inferences that can be drawn therefrom, the opposing party has failed to establish his case. Otherwise it is the duty of the court to submit the case to the jury. Terrell v. Southern Ry. Co., 225 Ky. 645, 9 S. W. (2d) 993; Grinstead v. Feinstein, 231 Ky. 502, 21 S. W. (2d) 806.

There are two lines of cases of this character, namely: (1) Where a person is seen to be in a relatively safe place and the trainmen are warranted in assuming that he will continue therein, but he suddenly changes his course and steps or drives in front of the oncoming train; and (2) where one is seen approaching directly the zone of danger and no signals or other steps are taken to warn

him or awaken him to a sense of danger. The difficulty in this case, as in many others, is to determine in which class it belongs.

Typical of the first class of cases is Young v. L. & N. Railroad Co., 228 Ky. 772, 15 S. W. (2d) 1001, 1002, in which are cited and reviewed several other decisions and the two classes are distinguished. In the course of the opinion, this rule is stated: "As we have seen, if there was any circumstance or movement to indicate to the trainmen that the traveler might come into a place of peril from the train, the railroad operatives would be compelled to act accordingly."

The instant case is a very close one, but.it seems to the court that the evidence was sufficient to place it in the second line of cases and to require a submission to the jury. The facts bring it within the rule just stated, for the uncontradicted and positive evidence was that Cornett was, for a short distance at least, moving directly into the path of the approaching train. Cases in which the facts are somewhat similar and which held that the question of the railroad company's negligence was for the jury, are Louisville & N. R. Co. v. Perry's Adm'r, 173 Ky. 213, 199 S. W. 1064; Fiddler's Adm'r v. C. & O. Ry. Co., 213 Ky. 729, 281 S. W. 984; Chesapeake & O. Ry. Co. v. Davis, Adm'r, 230 Ky. 268, 18 S. W. (2d) 1108; and, in part, Johnson's Adm'r v. L. & N. Railroad Co. (Ky.) 118 S. W. 383, and Louisville & N. R. Co. v. Cook (Ky.) 128 S. W. 81.

The deceased undoubtedly did not hear the whistle or bell of the approaching train because of the clang and clatter of the freight train which was at the moment in the act of stopping. He was entirely oblivious of the on-coming train, and, when he was seen, or should in the exercise of ordinary care have been seen, by the trainmen to have veered his course and to be walking directly toward the track, it was the duty of the company's agents to give additional warning and to use reasonable efforts to avoid striking him. The toot of the whistle would perhaps have saved his life. See Cincinnati, N. O. & T. P. Ry. Co. v. Jones' Adm'r, 166 Ky. 817, 179 S. W. 851.

We have premised the foregoing, as indicated, on the theory that the evidence of the plaintiff would justify a jury in finding the conclusions stated. That was the province of the jury, and the court erred in giving the peremptory instruction.

The judgment is reversed and cause remanded for a new trial.

Whole court sitting.